Exhibit 5



# INFINITE
R E A L I T Y
## INTELLECTUAL PROPERTY AND CONSULTING AGREEMENT

THIS INTELLECTUAL PROPERTY AND CONULTING AGREEMENT (the "Agreement"), dated as of January 1, 2023 (the "Commencement Date"), among **Infinite Reality, Inc**, a Delaware corporation ("**Infinite Reality**"), **Infinite Metaverse, Inc.**, a Delaware Corporation ("Infinite Metaverse") and **BLISS PRODUCTIONS SPÓŁKA Z OGRANICZONĄ ODPOWIEDZIALNOŚCIĄ** a Poland corporation, with an address of ul. św. Wojciecha 3/3A/1, 10-038 Olsztyn, Poland ("**Bliss**"). (The Term Infinite Reality shall include its affiliate Infinite Metaverse, and Infinite Reality and Bliss are each a "Party" and collectively the "Parties").

WHEREAS, Bliss has been providing consulting and technology development and support services (the "Services") and creating and delivering Deliverables (as defined below) to Infinite Reality;

WHEREAS, a dispute has arisen between the Parties regarding the transfer of title to the Deliverables and amounts owed to Bliss for Services rendered to Infinite Reality prior to the Commencement Date;

WHEREAS, the Parties wish to clarify the transfer of title to the Deliverables, and resolve and settle fully all disputes and claims regarding the transfer of title to the Deliverables to Infinite Reality prior to the Commencement Date and amounts owed to Bliss for Services rendered prior to the Commencement Date; and

WHEREAS, the Parties wish to continue their business relationship and set forth the terms and conditions of future consulting and development services to be provided by Bliss;

NOW, THEREFORE, in consideration of the foregoing premises and the respective agreements hereinafter set forth and the mutual benefits to be derived herefrom, and for other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, Bliss and Infinite Reality hereby agree as follows:

1.    Engagement. Infinite Reality hereby engages Bliss as a Consultant, and Bliss hereby agrees to provide the consulting Services, as defined below, to Infinite Reality, all on the terms and subject to the conditions set forth below.

2.    Term; Services of Bliss.

(a)    The Term of this Agreement shall begin on the Commencement Date and thereafter renew month to month (the "Term"), unless earlier terminated in accordance with this Agreement.

(b)    Bliss agrees to consult with and provide technology development services and support (the "Services") for Infinite Reality in such manner and on such matters as may be reasonably requested and agreed to by the Parties from time to time in writing.

3.    Compensation for Services and Deliverables Prior to the Commencement Date.

(a)    The Parties agree that fee for all consulting and development Services provided by Bliss to Infinite Realty prior to the Commencement Date, including work and Deliverables created for Infinite Reality (including the Deliverables summarized on Schedules A-1 and A-2 attached hereto and incorporated by reference herein), through the October 14, 2022 has been paid in full as follows: $2,282,500 in cash plus 1,281,092 common shares of Infinite Reality with an agreed value at the time of issuance of $6,043,500 (the "Total Paid Fee").

(b)    The Parties agree that a balance of $340,000 for Deliverables created between October 15, 2022 and December 30, 2022 remains outstanding (the "Outstanding Fee"). Infinite Reality will pay the Outstanding Fee as follows: (i) $50,000 in cash payable on the date

1



**INFINITE**
R E A L I T Y

of execution of this Agreement, (ii) 10,600 common shares of Infinite Reality and (iii) the balance of $290,000 plus 10% for a total of $319,000 on the earlier of (A) 10 business days after Infinite Reality shares being listed for public trading or (B) November 30, 2023. Notwithstanding the foregoing, to the extent that Infinite Reality receives sufficient additional funding for payment of vendors, Infinite Reality shall use it reasonable commercial efforts to reduce the Outstanding Fee earlier.

4.      <u>Expenses</u>.   Infinite Reality shall reimburse Bliss for reasonable, pre-approved in writing (i) travel expenses and (ii) other out-of-pocket fees and expenses as have been or may be incurred by Bliss in connection with the rendering of the Services hereunder.

5.      <u>Payment</u>. Invoices shall include the compensation amount and the incurred expenses. The invoices are payable upon transmission to Infinite Reality and shall be paid within twenty-one (21) calendar days after transmission to Infinite Reality. Any invoice which is not paid within twenty-one (21) days shall be deemed late. In the event an invoice is not paid when due, Infinite Reality shall, in addition to Compensation and Expenses, pay Bliss a late fee in the amount of 1.5% of the invoice Compensation amount per occurrence, if payment is not made within five (5) days of receipt by Infinite Reality of notice that such payment is late.

6.      <u>Performance</u>.  Bliss shall provide and devote to the performance of this Agreement such time as is reasonably requested by the management of Infinite Reality as needed to perform the Services required under this Agreement.   The Services shall be provided in a high quality and professional manner (which in no event shall be less than industry standard) and Bliss shall diligently and to the best of Bliss's ability perform the services required under this Agreement. Bliss represents and warrants that Bliss shall comply with all applicable laws and regulations, and has the qualifications, permits, licenses and registrations necessary to perform the Services.

7.      <u>Confidentiality</u>.      During the term of this Agreement, it may be necessary or desirable for Infinite Reality to provide you Confidential Information.  Bliss shall not, either during the continuance of this Agreement or after its termination, disclose to any person (except with the written authority of Infinite Reality or unless ordered to do so by a court of competent jurisdiction), or use for any purpose other than as contemplated by this Agreement, any information relating to the business, assets, finances or other affairs of a confidential nature of Infinite Reality, its parent and/or any of its affiliates ("<u>Confidential Information</u>") of which Bliss may have become possessed prior to or during the term of this Agreement. Bliss recognizes that Bliss's disclosure of Information will give rise to irreparable injury to the Infinite Reality, inadequately compensable in damages, and that, accordingly, Infinite Reality may seek and obtain injunctive and other equitable relief for breach of this Agreement, in addition to any other legal remedies which may be available. If Infinite Reality is successful in any action, equitable or otherwise, to enforce this Agreement, Infinite Reality shall be entitled to recover costs and attorney's fees from Bliss Upon termination of this Agreement for any reason or at any time upon the request of Infinite Reality, Bliss shall promptly return to Infinite Reality all property of Infinite Reality and/or its affiliates in Bliss's possession, and documents, records, notebooks, computers, accessories, and similar repositories of or containing such Confidential Information, including copies thereof, then directly or indirectly in Bliss's possession, whether prepared by Infinite Reality or otherwise.

8.      <u>Infinite Reality Property; Work for Hire; License</u>.   (a) All deliverables, materials, drawings, models, codes, source code, programs or other work created or prepared by Bliss for Infinite Reality prior to or during the Term of this Agreement ("<u>Deliverables</u>") upon payment to Bliss for any such Deliverables, shall be owned exclusively by Infinite Reality and, be "works made for hire" under all applicable copyright laws.   To the extent any Deliverables do not qualify as "work made for hire," Bliss hereby conveys the worldwide right, title to and interest in the Deliverables to Infinite Reality, including without limitation, all patent, copyright and trade secret rights. For the avoidance of doubt, in addition to the foregoing and not in limitation thereof, Infinite Reality shall have all rights in and to the Deliverables, including, without limitation the sole and exclusive distribution, exhibition, display, performance, broadcast, streaming and reproduction rights in all media (including without limitation, digital and internet) whether now known or hereafter created. Bliss waives all moral rights (droit moral) and any similar or analogous rights in and to the Deliverables. Infinite Reality shall have the right, at Infinite Reality's option and expense, to seek protection by obtaining patents, copyright registrations, and filings related to proprietary or intellectual property rights. Bliss agrees to cooperate with Infinite Reality to confirm or record Infinite

2

DocuSign Envelope ID: 10A5A647-21D7-4FD2-A6A7-E2BE80E0F585



**INFINITE**
R E A L I T Y

Reality's rights in the Deliverables, including signing such other documents as may be reasonably requested by Infinite Reality for that purpose. For the avoidance of doubt and not in limitation of the foregoing, the Parties agree that title to any and all Deliverables created by Bliss for Infinite Reality prior to October 15, 2022, including the Deliverables summarized on Schedule A-1, has transferred to Infinite Reality and such Deliverables are exclusively owned by Infinite Reality.

(b)     Bliss hereby grants to Infinite Reality a worldwide, exclusive, royalty-free, right and license to use the Deliverables (summarized on Schedule A-2) created for Infinite Reality between November 1, 2022 and December 30, 2022 (the "A-2 License") until the Outstanding Fee of $367,000 is paid in full or terminated as provided below. For avoidance of doubt, title to any and all Deliverables created by Bliss for Infinite Reality prior to November 1, 2022, including the Deliverables summarized on Schedule A-2, will not transfer to Infinite Reality until the Outstanding Fee is paid in full and such Deliverables shall remain exclusively owned by Bliss until the Outstanding Fee is paid at which time exclusive ownership will transfer to Infinite Reality. If such outstanding Fee plus interest is not paid by Infinite Reality to Bliss in accordance with the payment terms of Section 5 of this Agreement, Bliss shall have the right to terminate the A-2 License effective immediately upon written notice thereof to Infinite Reality.

9.     Indemnification. Bliss shall indemnify, defend and hold harmless Infinite Reality, its parent, affiliates, directors, officers, employees, agents, successors, and assigns against any suits, actions or proceedings at law or in equity (including reasonable attorney's fees) and all claims, losses, damages, injuries (including death), judgments, obligations, liabilities and expenses arising out of or resulting in any way from: (a) a breach by Bliss of Bliss's representations, warranties, and agreements under this Agreement; (b) any negligent act, omission or willful misconduct of Bliss in performing the Services under this Agreement; and (c) any claims for violation or infringement of any proprietary, copyright, trademark, U.S. patent, or other intellectual property rights of any third party, except to the extent caused by an instruction provided to Bliss by Infinite Reality in writing..

10.     Termination. Infinite Reality may terminate this Agreement effective immediately upon a material breach of this Agreement by Bliss. Either party may terminate this Agreement, at any time and for any reason, effective immediately upon written notice.

11.     Independent Contractor. Bliss and Infinite Reality agree that Bliss shall perform services hereunder as an independent contractor, retaining control over and responsibility for Bliss's activities undertaken in performance of this Agreement. Bliss shall not be considered an employee or agent of Infinite Reality as a result of this Agreement nor shall Bliss have authority to contract in the name of or bind Infinite Reality or be entitled to receive any benefits offered to employees of Infinite Reality. Bliss shall be responsible for paying all federal, state and local taxes incurred as a result of any fees received under this Agreement. Bliss shall indemnify and hold Infinite Reality harmless for all expenses incurred, including reasonable attorney's fees, in relation to Bliss's non-payment of federal, state or local taxes hereunder.

12.     Waiver of Breach. The waiver by a Party of a breach of any provision of this Agreement by the other Party shall not operate or be construed as a waiver of any subsequent breach of that provision or any other provision hereof.

13.     Assignment. Neither Infinite Reality nor Bliss may assign its rights or obligations under this Agreement without the express written consent of the other; provided, however, Infinite Reality may assign this Agreement to an Affiliate or to an assignee of all or substantially all of Infinite Reality's assets or business without the consent of Bliss.

14.     Successors. This Agreement and all the obligations and benefits hereunder shall inure to the successors and permitted assigns of the parties.

15.     Choice of Law; Waiver of Jury Trial. This Agreement shall be governed by and construed in accordance with the laws of Connecticut, without giving effect to any choice of law or conflict of law provision or rule (whether of Connecticut or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than Connecticut. The parties agree that the proper and exclusive forum and venue in all legal actions brought to enforce or construe any of the provisions of this agreement shall be in the United States District Court, District of Connecticut or, if federal jurisdiction is lacking in such legal action, in the Superior Court for Fairfield County and Bliss hereby submits to the exclusive jurisdiction of such

3

DocuSign Envelope ID: 10A5A647-21D7-4FD2-A6A7-E2BE80E0F585



# INFINITE
R E A L I T Y

courts. THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING TO WHICH THEY ARE BOTH PARTIES INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT.

16.    Limitation of Liability; Survival.  In no event shall Infinite Reality be liable hereunder for incidental, indirect, special or consequential damages of any kind, even if advised of the possibility thereof.  The terms of this Agreement that either explicitly or implicitly are intended to survive shall survive termination or expiration of this Agreement, in whole or part, for any reason whatsoever.

17.    Entire Agreement; Modification; Severability.  This Agreement shall constitute the entire agreement between Bliss and Infinite Reality with respect to the furnishing of Services described herein. No provision of this Agreement shall be deemed waived, amended or modified by either party unless such waiver, amendment or modification is in writing, and signed by an authorized representative of each party. If any term of this Agreement is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Agreement shall remain in full force and effect. The words "include" and "including" shall in each case mean, "include without limitation" or "including without limitation".

IN WITNESS WHEREOF, Bliss and Infinite Reality have caused this Agreement to be duly executed and delivered on the date and year first above written.

**INFINITE REALITY: Infinite Reality, Inc.**

By:

Title:  COO

Date:  7/27/2023

**BLISS: BLISS PRODUCTIONS SPÓŁKA Z OGRANICZONĄ ODPOWIEDZIALNOŚCIĄ**

By:  *Aleksandra Grabowska*

Title:  Director of Operations

Date:  July 20 2023

DocuSign Envelope ID: 10A5A647-21D7-4FD2-A6A7-E2BE80E0F585



**INFINITE**
R E A L I T Y

## SCHEDULE A-1

**Deliverables through October 30,2022**

1.   **virtual machine setup**
     · Installing all the software required to run the application, overcoming virtualization challenges, and working with Coreweave to meet demanding requirement of their platform.

2.   **virtual machine instancing**
     · On-demand scaling of machines running game instances, controlled by parameters from a server and auto-scaled according to usage.

3.   **game streaming application**
     · A web application that connects to Unreal Engine via Pixel Streaming and allows interaction with the game on a remote machine, as well as audio/video chat using AgoraRTC.

4.   **game streaming queue/server**
     · Automatic allocation of players to available instances, integrated with Unreal Engine, and automatic assignment of DNS records for reserved instances.

5.   **admin panel**
     · A web application to control all parameters of the game deployment, such as virtual instance count and branches, as well as in-game stream URLs.
     · Fixing the AWS Cognito login integration on enter.theinfinitereality.com (formerly theinfinitereality.com) and integrating the streaming application.
     · Managing servers where services such as queue servers, a streaming application, and an admin panel application were hosted on Linode.com.

6.   **Player Avatars**
     · Allow players to control 3D characters whose movements are sent to other players.

7.   **Character customizer**
     · Users can create custom characters that other players can see.

8.   **Sentry integration**
     · Integrates Unreal Project with Sentry Crash Reporter, giving easy access to crash reports and problems with the application.

9.   **Streaming Screen**
     · Allow streaming of images and sound to in-game screens using multiple streaming services such as YouTube or Amazon IVS.

10.  **Amazon Services Integration**
     · Allows storing user data, application configurations, and starting new instances of game servers using Amazon Services.

11.  **Agora Audio Video Chat**
     · Allows the use of multi-platform audio-video chat in Unreal Engine applications, even when using Pixel Streaming.

12.  **Crowd System**
     · Allows displaying crowds of people with relatively low computing cost.

13.  **Minimap system**
     · Allows players to see the location of Points of Interest on the map, and to teleport to selected places on that map.

14.  **Vehicles**
     · Allows players to use bikes and cars to travel through the game world.

## SCHEDULE A-2

DocuSign Envelope ID: 10A5A647-21D7-4FD2-A6A7-E2BE80E0F585



# INFINITE
R E A L I T Y

### Deliverables November 1, 2022 through December 30, 2022

1.  **Integrate UCI-TCL level**
    · Place the UCI-TCL level into the project, with character configurator, spawn points, live social.
2.  **Add streaming screens to the level**
    · Add both live stream and VOD video urls onto appropriate screens. Design and implement a channel selector menu  (Hard coded URLs)
3.  **Integrate Portal and Infinite Reality APIs messaging into the game client**
    · Connect the needed API messaging from the portal into the game engine. This includes user RoomID, managing tenant IDs and subsequent room creation/destruction in Gamelift.  Implement Cognito Auth bridge to pass user info to and from the IR authorization.
4.  **Updates to the avatar configurator**
    · Update design of the V1 Character Configurator to load from a live view of the space.
5.  **Setup a staging server flow**
    · Added a 3rd environment (Staging) between development and production to reduce the number of issues when testing and demoing.
6.  **Update all screens and messaging to UCI-TCI**
    · Integrate engine interface changes, controls legend and button styles to DSE/UCI (as supplied)
7.  **Audio Updates**
    · Add sound volume controls for multiple audio channels and set a default mix. Control for screen audio and Video chat audio.
8.  **Video Chat blocking**
    · Create a mechanism for users to unilaterally block another user with the result being a bilateral block between those users.
10. **Update/Release mouse control**
    · Develop a solution to allow the mouse cursor to freely move between the engine and the OS without key commands. Implement camera look with right click/drag.
11. **Improve user experience overall**
    · A set of feature updates based on testing of existing features to align with DSE requirements. For example: AFK should be set longer to 30 minutes, avatars should report loss of connection faster than is currently reported, fix confusing pop-up messaging, set-up audio rules, etc.